IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTINA BLACKFORD, Individually and as Mother of DYLAN ZACHERY, a minor, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CIVIL NO. 07-437-GPM ) |
| WAL-MART STORES, INC., | ) ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court on a motion for summary judgment filed by Defendant Wal-Mart Stores, Inc. ("Wal-Mart"). The Court held a hearing on the motion on March 10, 2008. For the reasons set forth on the record and below, the motion is granted.

## BACKGROUND

Plaintiff Christina Blackford is the mother of Plaintiff Dylan Zachery, who was born on January 26, 2003. Around midnight on July 9, 2005, Blackford brought Dylan to a Wal-Mart store where Dylan's father, Charles Zachery, worked (it was near the end of his shift). Blackford also worked for Wal-Mart at this store. While Blackford and Zachery were speaking, Dylan activated and was injured by an unattended floor buffing machine near them in the lay-away area of the store.

Blackford brings a two-count suit: the first count seeks judgment against Wal-Mart in the amount of Dylan's medical bills for which she became liable as a result of his injuries under the Illinois Family Expense Act; the second seeks, on behalf of Dylan, judgment against Wal-Mart for

his pain and suffering, disability, loss of normal life, and disfigurement. This first count is derivative of the second, so the negative resolution of the liability issue resolves the medical expenses issue. *Cullotta v. Cullotta*, 678 N.E.2d 717, 722 (Ill. App. 1st Dist. 1997) ("If a defendant cannot be held liable in tort to the minor, neither can the defendant be liable for his medical expenses.")

Wal-Mart moved for summary judgment under Federal Rule of Procedure 56, arguing that, under Illinois law, it had no duty of care to warn of or take precautions against the danger posed to Dylan by the buffer. Blackford responded, arguing that genuine issues of material fact exist as to whether the buffer presented an obvious danger, how the court should assess the relative culpability of the Blackford and Wal-Mart,[1] and what the effect of Blackford's distraction from Dylan at the time of the injury is under Illinois negligence law.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Wal-Mart is a citizen of Delaware and Arkansas, and Blackford and Dylan Zachery are citizens of Illinois (*see* Doc. 2). Moreover, it is apparent from the allegations of the complaint and the notice of removal that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

## ANALYSIS

Summary judgment is governed by Federal Rule of Procedure 56, explained by the Seventh Circuit as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[1] Like the medical expenses issue, this issue is resolved by the grant of summary judgment to Wal-Mart. "In a common law negligence action, before a plaintiff's fault can be compared with that of the defendant, it obviously must first be determined that the defendant was negligent." *Ward v. K Mart Corp.*, 554 N.E.2d 223, 229 (Ill. 1990). If the defendant is not negligent, it is obvious that there is no issue as to whether the plaintiff was also negligent.

> material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. The evidence must create more than some metaphysical doubt as to the material facts. A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee,* 246 F.3d 927, 931-32 (7th Cir.2001) (internal citations and quotations omitted).

The events described above are largely undisputed; Blackford's response in opposition to summary judgment did not set out any disagreement over the course of events that night. The only question is one of law. In Illinois, the "essential elements of a cause of action based on common law negligence [are]: the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990). Under Illinois law, landowners have a duty of reasonable care under the circumstances toward entrants. Premises Liability Act, 740 ILCS 130/2 (also abrogated the common-law distinction between licensees and invitees), *Ward*, 554 N.E.2d at 229, Restatement (Second) of Torts § 343 (1965) (Illinois' endorsement of Restatement view noted in *Ward*, 554 N.E.2d at 229).

What a landowner's duty is under the circumstances and what constitutes reasonable care is analyzed in Illinois as a question of law by a four-part test: (1) the reasonable foreseeability of the injury, (2) the likelihood of injury, (3) the magnitude of the burden on the defendant in guarding against injury, and (4) the consequences of placing that burden on defendant. *Ward*, 554 N.E.2d at 291-92, *Harlin v. Sears Roebuck and Co.*, 860 N.E.2d 479, 484 (Ill. App. 1st Dist. 2006).

Another way of stating this is that what constitutes reasonable care is determined by

> a comparison between the cost of the precaution that would have prevented it and the cost of the accident that occurred as a result of the absence of the precaution, discounted by the probability of an accident if the precaution was not taken. If an accident if it occurs would cause on average a $10,000 loss, and the probability that the accident would occur unless a particular precaution was taken was 1 percent, and the precaution would have cost only $50, then the failure to take it was indeed negligence. For an expected loss of $100 (1 percent of $10,000) could have been prevented at a cost of only $50. Rarely in an actual negligence case are the factors that determine whether a precaution is cost justified actually quantified.

*Torrez v. TGI Friday's, Inc.*, 509 F.3d 808, 811 (7th Cir. 2007).

Here, it is clear that the cost to Wal-Mart to take all of the precautions that would be necessary to render a store (or any place) absolutely safe to a 2 ½ year old child is beyond the cost of the loss that could be expected from any given instrumentality on which a child may be injured, especially when that cost is discounted by the likelihood of injury on any given object. Almost all items in a store pose some risk to a toddler, including all of the items on a shelf that a child may pull down upon himself. For a landowner such as Wal-Mart, the cost of securing the entire store is simply too high to offset the small chance that parent-supervised children will find a way to injure themselves.

At the hearing on the motion for summary judgment, in response to the Court's inquiry about these costs, Blackford's counsel argued that the cost to Wal-Mart to install a childproof starting mechanism on the buffer would be small compared to the expected loss caused by an injury. It may be a small cost, but the likelihood that a supervised child would be injured by this machine is even smaller, while the cost of child-proofing an entire store is exceptionally high, given the unforeseeability of danger from any particular item, especially where the parents are present to

supervise. In addition, under the summary judgment standard stated by the Seventh Circuit in *Albiero* and the calculation of the relative cost of reasonable care stated in *Torrez*, Blackford must actually come forward with specific facts about the costs of precautions, the likelihood of injury, and the average cost of such injuries to survive summary judgment, which it has not done. An attorney's surmise that the cost would be small is insufficient given this burden. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir 2001) (the nonmovant "will not prevail by relying on a mere scintilla of evidence or speculation to support her position.")

Because of a child's propensity to find danger, Illinois law absolves landowners of liability toward a child-entrant when he is accompanied by a parent, if the danger is known or obvious to the parent. *Harlin*, 860 N.E.2d at 486 ("While a mere allegation that an injured child was accompanied by his or her parent is not enough to relieve the landowner of his or her duty, the landowner will be absolved of a duty where the child was injured due to an obvious danger while under the supervision of his or her parent, 'or when the parents knew of the existence of the dangerous condition that caused the child's injury.'") This goes to whether an injury is foreseeable or likely to occur; if a danger is known or obvious to the parents, it is unforeseeable and unlikely that the parent will allow an injury thereby to occur. *Perri v. Furama Restaurant, Inc.*, 781 N.E.2d 631, 636 (Ill. App. 1st Dist. 2002). ("a parent's duty to supervise absolves a defendant of liability only where consideration of the duty to supervise precludes a finding of liability under recognized theories-for example, where an injury is not foreseeable unless a parent or caretaker fails to properly supervise a minor child") (citing *O'Clair v. Dumelle,* 735 F.Supp. 1344 (N.D.Ill.1990) (finding an injury unforeseeable because parent's failure to adequately supervise was not reasonably foreseeable)). The principle is the same for adult entrants, who are expected to avoid known or obvious dangers, "unless the

possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts, § 343A (1965) (adopted in *Ward*, 554 N.E.2d at 231-32).

Here, there is no genuine dispute that Plaintiff Blackford was aware of the buffer's presence.[2] Instead, she argues that an issue of material fact exists as to whether, under Illinois law, the buffer was an obvious danger, since she claims that she was not aware that it could be activated by a child, and that, unactivated, it posed no threat (Doc. 31 at 2). It is true that in one case where a child was injured while the parents were present, *Perri v. Furama Restaurant, Inc.*, an Illinois court held the "obviousness" of the danger could be a question of fact where the danger was an otherwise innocuous pot of tea placed on a lazy susan.[3] *Perri*, 781 N.E.2d at 637. In *Perri*, though, the court

---

[2] Though a deposition given by Blackford is unclear as to exactly when she saw the buffer, Blackford did indicate that she saw it before Dylan was injured, and she does not dispute Wal-Mart's assertion in its motion for summary judgment that she was aware that the buffer was present (Doc. 23-4 at 2). Instead, Blackford argues that the buffer did not present an obvious danger as a matter of law (Doc. 31 at 2).

[3] The *Perri* court stated "Whether a condition presents an open and obvious danger, however, *is* a question of fact." *Perri*, 781 N.E.2d at 637 (emphasis added). This is contradicted by other Illinois cases that have upheld summary judgment based on a finding of no duty that was premised on a danger's being obvious. *See Harlin v. Sears Roebuck and Co.*, 860 N.E.2d 479 (Ill. App. 1st Dist. 2006); *Stevens v. Riley*, 580 N.E.2d 160 (Ill. App. 2d Dist. 1991); *Kay v. Ludwick*, 230 N.E.2d 494 (Ill.App. 1967). The *Perri* court relies for this assertion on *Pullia v. Builder's Square*, 638 N.E.2d 688 (Ill. App. 1st Dist. 1994), in which a store that invited customers to serve themselves owed a duty to prevent injury to a man who climbed onto store shelves to get an item that was placed out of his reach on an upper shelf. The court agreed that the obviousness of the shelves' danger was a "question of fact *in this case*," because the plaintiff claimed to have failed to see "any real danger" from the shelves. *Pullia*, 638 N.E.2d at 693 (emphasis added). Though Blackford similarly claims that she didn't realize the buffer was a danger, no reasonable trier of fact could believe that the buffer's danger was not obvious. Unlike inert and benign-appearing shelves, or even a simple pot of hot tea, the buffer was a large, powerful machine that was mobile and powered. These cases are unlike this one; here, the danger is obvious as a matter of law. In addition, the *Perri* court noted that a reason to deny summary judgment was that the defendant conceded the question of obviousness to be a fact issue. *Perri*, 781 N.E.2d at 832.

emphasized that "None of the adults in the group actually saw the pot of tea until after the injury occurred," and that "[i]f parents or caregivers are unaware of a particular danger, it is reasonably foreseeable that they will fail to prevent a minor child from encountering that danger." *Perri*, 781 N.E.2d at 636-37. Here, though, Blackford was aware of the buffer. In addition, the buffer's danger was at least as obvious to Blackford as was the store's display stand in *Harlin*, where an Illinois court granted summary judgment for the defendant because the danger posed by a wooden shelf with squared-off corners was obvious as a matter of law.

> Applying the reasoning of *Stevens, Kay,* and *Perri* to this case, we find that even if the corner of the display stand constituted a dangerous condition, [the store] did not owe [the child] a duty. [The child's mother] testified she saw the display stand, which she described as tall, wooden, not circular, and as having metal on the bottom, before [the child] fell. … This case is therefore unlike *Perri,* where the parents were unaware that the hot tea had been placed on their table. Rather, as in *Stevens,* in this case the parent was made aware of any dangerous condition, even if the injured child could not be expected to appreciate it. As in *Kay,* [the mother] apparently saw no harm in letting her daughter walk on her own near the display stand. Although [the mother] testified she did not perceive anything dangerous about the stand, we find that it is a matter of common sense that two year olds often fall and may get hurt when they land on noncircular objects with metal at the bottom.

*Harlin*, 860 N.E.2d at 487.

Here, it should have been obvious to Blackford (herself a Wal-Mart employee) that the large, powerful buffer could pose a danger to a curious toddler; under Illinois law, the obviousness of *this* danger would not raise a question of fact. Blackford saw the buffer; even if Dylan wouldn't have been able to know that it posed a danger, Blackford should have, yet she "apparently saw no harm in letting" Dylan play with it. *Harlin*, 860 N.E. 2d at 487; *Kay*, 230 N.E.2d at 497. Although she claims to not have had any reason to know that it could be dangerous ("there is no evidence to

suggest that [she] knew the machine could be activated by a small child" (Doc. 31 at 2)), common sense suggests that 2 ½ year old boys often are attracted to large machines, that all machines have a means of activating them, some of which a child may discover through play, and that, if activated, a buffer could injure a child. *See also Stevens v. Riley*, 580 N.E.2d 160 (Ill. App. 2d Dist. 1991) (summary judgment for landowner affirmed; though creek partially obscured by weeds, danger posed to 17-month-old child by creek on property obvious to parents); *Kay v. Ludwick*, 230 N.E.2d 494 (Ill. App. 1967) (dismissal for failure to state a cause of action affirmed; danger posed to 4-year-old child by riding lawn mower obvious to parent, unforeseeable to landowner operating mower that child would attempt to climb aboard it).

Blackford also argues that she was distracted from Dylan at the time of the injury, and that the impact of her distraction on Wal-Mart's duty is a question of fact. But Blackford misstates the Illinois law regarding parental distraction. Only in *Perri* did the Illinois courts recognize that parental distraction from the child and from potential dangers might show that landowners failed to exercise due care to protect against the danger. But in that case, the distraction was foreseeable to the landowner, as it was involved in distracting the parents while the party was being seated at their restaurant table. *Perri*, 781 N.E.2d at 637.

The *Perri* court relies on *Ward*, in which an adult customer was injured leaving a store while carrying a large package when he ran into a post that was obvious; the Supreme Court of Illinois held that his distraction might have been foreseeable to the store, creating a duty and a question of fact. The "distraction" exception to the general rule that entrants will take reasonable care for their own safety, drawn from the Restatement (Second) of Torts § 343A (1965), is easily distinguished from the instant situation. The customer's distraction was foreseeable to the store in *Ward* because

the store

> invited customers to use the door through which plaintiff entered and exited,...had reason to anticipate that customers shopping in the store would, even in the exercise of reasonable care, momentarily forget the presence of the posts which they may have previously encountered by entering through the customer entrance door, [and could have reasonably foreseen] that a customer carrying a large item which he had purchased in the store might be distracted and fail to see the post upon exiting through the door.

*Ward*, 445 N.E.2d at 233. The *Ward* court analyzed several Illinois cases upholding this exception; from the court's characterization, it is obvious that all of them were situations in which the landowner was or should have been aware of the injured entrant's distraction, and in most the landowner was actually part of the distraction.[4] *Ward*, 554 N.E.2d at 232-33. Here, Wal-Mart had no reason to expect that Blackford would fail to supervise Dylan, and Blackford does not allege that it was part of the reason that she did so, since it certainly was not. Finally, the *Ward* court noted that it "may well have arrived at a different conclusion … if the plaintiff would not have been carrying any vision-obscuring bundle." When the danger is not obscured in any way, a landowner has no duty to protect entrants against it. *Ward*, 554 N.E.2d at 232.

---

[4] "In *Erne v. Peace*..., 517 N.E.2d 1203 [(Ill. App. 2d Dist. 1987)], the plaintiff was injured when she fell off a step/stoop while exiting the defendant's premises. The court held that the injury was reasonably foreseeable despite the fact that the step/stoop was obvious and that the plaintiff had previously encountered it because the defendants were aware of the fact that she was visually impaired and would encounter the condition. (... 517 N.E.2d 1203.) Similarly in *Shaffer v. Mays...,* 489 N.E.2d 35 [(Ill. App. 4th Dist 1986)], the plaintiff fell into an open and obvious hole in a house which was being remodeled. The court held that the defendant's duty extended to this risk, even though the plaintiff knew of the existence of the hole, because the defendant had reason to expect that the plaintiff's attention would be distracted while moving roof trusses. (...489 N.E.2d 35.) In *Courtney v. Allied Filter Engineering Inc....,* 536 N.E.2d 952 [Ill. App. 1st Dist. 1989 ], the plaintiff was injured when he fell off a lowered dockplate used for unloading trucks. The court held that despite the obvious nature of the dockplate, the defendant had reason to foresee that the plaintiff would be distracted while unloading his truck. ...536 N.E.2d 952." *Ward*, 554 N.E.2d at 232-33.

The general rule remains that entrants will take reasonable care for their own or their children's safety. *Ward*, 554 N.E.2d at 234; *Driscoll v. C. Rasmussen Corp.*, 219 N.E.2d 483, 486 (Ill. 1966) ("The responsibility for a child's safety lies primarily with its parents, whose duty it is to see that his behavior does not involve danger to himself. Others can be held responsible for injuries only if they are at fault under some recognized theory of liability"); *Stevens*, 580 N.E.2d at 167 (applying *Ward*'s statement that parties must exercise reasonable care for their own safety to parents' duty to exercise reasonable care for their children's safety).

The only cause put forward by Blackford to explain her distraction is that she was speaking with Zachery; this "distraction" was not foreseeable to Wal-Mart. All parents might be momentarily distracted from their children by their own affairs, but this does not overcome the general rule that parents are responsible for supervising their children. If all distractions were potentially available to absolve parents of their responsibility to supervise, then parents would have no responsibility to supervise at all – the entire cost would devolve upon landowners. It is clear that Illinois law makes a distinction between distractions that should be foreseeable to landowners and ordinary distractions. A landowner need not anticipate that a responsible parent will be negligent; a landowner has a duty only to anticipate harms from an obvious danger if it is foreseeable that the parents would forget about it or be reasonably distracted from it. *See Stevens*, 580 N.E.2d at 167 (summary judgment for landowner affirmed; not foreseeable or reasonable for parents to be distracted from obvious danger posed by creek on property, though partly hidden by weeds, because they knew it was there).

## CONCLUSION

Because the events in this case are undisputed, and because Plaintiff has not put forth any genuine issues of material fact, Defendant's motion for summary judgment (Doc. 22) is

**GRANTED**. All other motions (Docs. 25, 26, and 27) are **MOOT**.  The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 4/2/2008

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge